IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANNETTE BIVINS,          )
                                )
        Plaintiff,         )
                                )
                                )     No. CIV-16-84-M
v.                          )
                                )
CAROLYN W. COLVIN,      )
  Acting Commissioner of Social     )
   Security Administration,      )
                                )
        Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her applications for disability insurance and supplemental

security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C.

§§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative

record (hereinafter TR___), and the parties have briefed the issues. The matter has been

referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's

decision be affirmed.

I. Background

Plaintiff protectively filed her applications for benefits on August 23, 2011, alleging

that she became disabled on March 31, 2011. She was last insured for the purpose of

disability insurance benefits on March 31, 2013. Plaintiff alleged that she was disabled due

1

to obstructive sleep apnea, pain in her back, knees, and wrists, swelling in her feet, numbness in her legs, depression, anxiety, and unspecified problems with her eyes and hips. (TR 187). Plaintiff stated that she stopped working on December 23, 2007, because she "[d]id not want to do it anymore." (TR 187). She has a tenth grade education and previous work as a courier, driver, and home health aide.

Plaintiff submitted a sparse medical record to the agency showing that she was treated for a four-month period by Dr. King between April 2011 and August 2011 for back and neck strain and "lumbar radiculitis." (TR 317-328). At Dr. King's recommendation, Plaintiff underwent three lumbar epidural steroid injections conducted by Dr. Mitchell in June and July 2011. Plaintiff reported that she had good pain relief following the injections, and by August 3, 2011, she was reporting only intermittent radicular pain to Dr. King. Dr. Mitchell noted that in July 2011, after her steroid injections, Plaintiff reported she was "much improved, and Dr. Mitchell noted that Plaintiff was observed to be walking without difficulty. (TR 331). In August 2011, after only four visits, Dr. King released Plaintiff from further treatment, although he recommended that she receive further treatment, including analgesic medications and one to two lumbar epidural steroid injections per year.

However, there is no record of further treatment of Plaintiff by any physician other than a reported follow-up visit to Dr. King in September 2013. Dr. King authored a "Lumbar Spine Medical Source Statement" dated September 16, 2013, in which Dr. King stated that Plaintiff had diagnoses of degenerative Grade I posterolisthesis at one level and "disc bulge" at one level of her lumbar spine. Dr. King listed Plaintiff's symptoms and opined that she

was essentially disabled because she could not sit or stand for longer than 10 minutes at a time or less than 2 hours in an 8-hour workday. Dr. King opined that Plaintiff would be incapable of even "low stress" work and that she would be absent more than four days per month and "off task" for 25% or more during a typical workday. (TR 387-88).

The record also contains the report of a consultative physical examination of Plaintiff conducted by Dr. Metcalfe in October 2007, apparently in connection with Plaintiff's previous application for disability benefits. (TR 299-301).

The record contains the report of a consultative psychological evaluation of Plaintiff conducted in December 2011 by Dr. Ball. Plaintiff reported that she had not received any mental health treatment and was not taking any psychotropic medications. Dr. Ball noted a diagnostic assessment of major depression, recurrent, moderate, and he noted that Plaintiff showed adequate memory and concentration and a seventh grade reading level during testing.

Following a hearing conducted in June 2014 at which Plaintiff and a vocational expert ("VE") testified, Administrative Law Judge McLean ("ALJ") issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, and that she had not worked since March 31, 2011, her alleged disability onset date. At the second step, the ALJ found that Plaintiff had severe impairments due to low back pain with leg pain, obesity, and depressive disorder. At the third step, the ALJ found that these impairments were not *per se* disabling as she did not have an

impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") for light work with additional limitations as follows: "The claimant should never climb ladder[s]/rope[s]/scaffolds or balance. The claimant can perform simple and some complex tasks with routine supervision; can have no public contact; can perform no customer service work; is able to interact appropriately with supervisors and co-workers on a superficial work basis; [and] is able to adapt to work situations." (TR 33).

Relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and this RFC for work, the ALJ found that Plaintiff was capable of performing her previous job as a courier. Based on these findings, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less

than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims of disability applicants. See 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he [or she] is not able to perform other work." Bowen

v. Yuckert, 482 U.S. 137, 142 (1987).

III. Evaluation of Treating Physician's Opinion

In her first claim of error, Plaintiff contends that the ALJ did not properly evaluate the opinion of Dr. King set forth in his September 2013 written Medical Source Statement. Defendant Commissioner responds that no error occurred with respect to the evaluation of this evidence.

Generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). However, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted). When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Id. at 1077.

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

In this case, the ALJ recognized in the decision that Dr. King was a treating physician who had provided a medical opinion of Plaintiff's work-related abilities. The ALJ stated that the opinion was given "some limited weight" for multiple reasons. First, the ALJ reasoned

that the record did not contain a contemporaneous treatment note and that Dr. King had last treated Plaintiff in August 2011. Although Plaintiff points to the cryptic statement by Dr. King on the Medical Source Statement itself that he saw Plaintiff in "F/U" on the same date, there is no office note in the record showing that he examined Plaintiff or made any findings in an examination.

Also, the ALJ reasoned that Dr. King's assessment of Plaintiff's functional abilities in the Medical Source Statement was of limited probative value because the physician did not treat Plaintiff for a continuous twelve-month period and had not seen her for over two years at the time of the opinion. Although Plaintiff argues the physician stated he treated Plaintiff "from April 13, 2011, through a follow-up on September 16, 2013," this is incorrect. Dr. King merely noted on the Medical Source Statement that he had "contact" with Plaintiff "4/13/11 [to] 8/15/11 [and] F/U 9/16/13." (TR 386). This statement does not indicate a continuous treatment relationship for any twelve-month period. Moreover, there are no office notes of treatment of Plaintiff by Dr. King after he released her from further treatment on August 15, 2011.

The ALJ further reasoned that Dr. King's treatment records were not consistent with the physician's opinion in the Medical Source Statement because Dr. King's treatment records did "not show objective findings consistent with the level of functioning reported in the Medical Source Statement." (TR 35). This is an accurate assessment. Dr. King's treatment notes, which reflected that he treated Plaintiff conservatively for a four-month period and released her from further treatment when she improved, are not consistent with

the severely-limited level of functioning set forth in the Medical Source Statement. The ALJ certainly did not err in considering this inconsistency. See Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). The report of the May 2011 MRI of Plaintiff's lumbar spine, which Dr. King referenced in his Medical Source Statement, showed only mild neural foraminal narrowing at two levels, and Dr. King suggested that Plaintiff undergo only conservative treatment measures for her "lumbar radiculitis." (TR 329).

Finally, the ALJ reasoned that neither Dr. King or Dr. Mitchell had placed any permanent restrictions on Plaintiff's physical activities contemporaneous with the Medical Source Statement. Again, this is an accurate statement based on the brief record of Plaintiff's treatment by Dr. King and Dr. Mitchell. Because the ALJ provided reasons that are well supported by the record for discounting Dr. King's opinion set forth in the Medical Source Statement, no error occurred in the analysis of this medical opinion.

IV. RFC Assessment

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's RFC assessment. However, Plaintiff points to no medical evidence showing that Plaintiff had additional physical limitations beyond those ascribed in the ALJ's RFC assessment. There is nothing in the medical evidence in the record, as Plaintiff suggests, indicating she would need "extra breaks or work at a slower pace" during an eight-hour workday. Plaintiff's Opening Brief, at 7.

The record shows that Plaintiff's neck and back pain, which her physician diagnosed

as left-sided lumbar radiculitis due to a motor vehicle accident, improved with conservative treatment over a four-month period, and she was released from further treatment. Plaintiff did not seek further medical treatment for this injury or for any of her allegedly disabling impairments. She was not taking any medications in December 2011 or in March 2014 (TR 263, 352). She did not describe any medical treatment during the administrative hearing. The ALJ limited Plaintiff to the performance of light work that would not involve climbing ladders, ropes, or scaffolds. Plaintiff's own statements concerning her usual daily activities, as well as the absence of evidence of ongoing medical treatment, is consistent with those statements and the medical evidence in the record.

With respect to her mental functional abilities, the ALJ found that Plaintiff had the RFC to perform simple and some complex tasks with routine supervision, with no public contact or customer service work and with interaction only on a superficial work basis with supervisors and co-workers. The ALJ's mental RFC assessment is consistent with the opinion of the agency medical consultant, Dr. Kelley, Ph.D., as to Plaintiff's mental RFC based on the psychologist's review of the record, including the report of the consultative psychological evaluation of Plaintiff conducted by Dr. Ball (TR 372).

As the ALJ pointed out in the decision, Plaintiff had not undergone any mental health treatment and she was not taking psychotropic medications, according to her statements to the consultative psychological examiner, Dr. Ball. Although Plaintiff complains that the RFC assessment does not account for her mental impairments, Dr. Ball noted a diagnostic assessment of moderate depression and noted that during the evaluation Plaintiff exhibited

a seventh grade reading level, an adequate memory, some difficulty with attention, reasonable reasoning and insight, and adequate concentration. (TR 354). Dr. Ball did not note any work-related mental limitations, and the record does not contain any medical evidence of mental functional limitations beyond those ascribed in the ALJ's mental RFC assessment.

Plaintiff contends that a limitation to "simple" work does not address Plaintiff's depression because "simple" work only identifies the skill level of work.[1] Plaintiff further contends that the ALJ should have included in her hypothetical questioning propounded to the VE the "impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence or pace, . . . ." Plaintiff's Opening Brief, at 9.

Plaintiff's argument misstates the ALJ's mental RFC assessment, which involved much more than just a limitation to "simple" work. The regulations define "basic work activities" as those that involve "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. § 404.1521. See Social Security Ruling 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situation; and to deal

---

[1] Plaintiff's counsel's unusual, discursive argument includes suppositions that are not related to any evidence in the record, including this one: "It could be argued that the idea that a person whom [sic] believes a worker can keep working while enduring severe depression is obviously a person who knows nothing about what severe depression do [sic] to a person when it is occurring." Plaintiff's counsel should refrain in the future from such purely subjective, unhelpful statements.

with changes in a routine work setting.").  The Tenth Circuit has stated that an RFC limiting a claimant "to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions . . . – or even a limitation to 'unskilled work' – can adequately account for a claimant's mental impairments, depending on their nature." Richards v. Colvin, 640 Fed. App'x 786, 790 (10th Cir. 2016)(unpublished op.).

Plaintiff does not point to any medical evidence in the record suggesting that her mental impairment caused functional limitations beyond those ascribed in the ALJ's mental RFC assessment.  She has not sought mental health treatment, and she did not take psychotropic medications.  The agency's medical consultant determined that Plaintiff was capable of performing mental work-related activities consistent with those found by the ALJ. The ALJ's RFC assessment adequately addressed Plaintiff's mental impairment due to depression by limiting her in terms of the tasks she could perform and her abilities to interact with the public, supervisors, and co-workers.

The second portion of Plaintiff's argument, that the hypothetical inquiry posed by the ALJ to the VE was defective because it did not contain the ALJ's step two and three findings, is frivolous.  As the ALJ explained in the decision, the limitations found in the steps two and three determination, in which the ALJ was required to assess whether the claimant's mental impairments are severe and also whether they are so severe as to meet or medically equal the severity of a listed mental impairment, 20 C.F.R. §§ 404.1520a(c) and (d); 416.920a(c) and (d), "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (TR 32).  "The

mental [RFC] assessment at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions . . . ." (TR 32). The ALJ's mental RFC assessment accounted for the moderate limitations found at steps two and three. Other than pointing to the step two and three findings, Plaintiff does not suggest that other evidence of limitations was ignored by the ALJ.

The VE testified that an individual with Plaintiff's RFC for work could perform both Plaintiff's previous job as a courier and other jobs in the national economy. The ALJ relied on this testimony in finding that Plaintiff was not disabled at step four and, alternatively, at step five. As there is substantial evidence in the record to support the Commissioner's final decision, the decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ October 5th ____, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____15th_____ day of _____September_____, 2016.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE